U.S. PUMICE COMPANY (formerly UNITED STATES PUMICE SUPPLY COMPANY), Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent U.S. PUMICE COMPANY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
U. S. Pumice Co. v. Commissioner
Docket Nos. 3514-70 7932-70.
United States Tax Court
T.C. Memo 1978-40; 1978 Tax Ct. Memo LEXIS 474; 37 T.C.M. (CCH) 215; T.C.M. (RIA) 780040; January 30, 1978, Filed Thomas E. O'Sullivan, for the petitioner. Melvern Stein, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined deficiencies in petitioner's Federal income tax as follows: Docket No.
Year Ended
Deficiency
3514-70
November 30, 1965
$ 9,911
November 30, 1966
6,899
7932-70
November 30, 1967
13,307
November 30, 1968
15,071
These cases were consolidated for purposes of trial, briefing, and opinion. Concessions having been made, the issue for decision per tains to petitioner's method of computing percentage depletion under section 613. [1] Specifically, we are to decide whether petitioner has made a proper application of the pro-portionate profits method of determining gross income from mining. FINDINGS OF FACT Some of the facts have been *476 stipulated and are so found. Petitioner is a California corporation which maintained its principal place of business at Los Angeles, Calif., when the petition herein was filed. For the years ended November 30, 1965, November 30, 1966, and November 30, 1967, it filed a corporate income tax return with the District Director of Internal Revenue, Los Angeles, Calif., and for the year ended November 30, 1968, with the Western Service Center, Ogden, Utah. Petitioner is an integrated miner-manufacturer of pumice. As such, it mines pumice from natural deposits. The pumice is then transported to its mill where it is shaped by petitioner into sizes for various commercial uses. Once the manufacturing process at the mill is completed, the finished produce is shipped by trucks or rail to one of petitioner's warehouses which are located in Los Angeles, Chicago, and New York. The finished product is stored at these warehouses awaiting shipment to customers. During the years in issue, petitioner incurred transportation costs from its mill to its warehouses and warehousing costs in the approximate amounts as follows: Year Ended
Transportation
Warehousing
November 30, 1965
$14,248
$10,386
November 30, 1966
18,293
11,354
November 30, 1967
18,254
12,676
November 30, 1968
19,546
17,330
*477 In computing its depletion deduction under the proportionate profits method formula, [2] petitioner allocated the above warehousing and transportation expenses between its mining and nonmining activities. It is respondent's belief that these costs should be allocated in full to petitioner's nonmining activities. OPINION At issue is the treatment to be accorded certain transportation and warehousing expenses incurred by petitioner in computing the proper amount of its deduction for depletion during the years in issue. Section 611(a) provides as a deduction in computing taxable income "a reasonable allowance for depletion." [3] Under section 613(a), in the case of mines and other mineral deposits, the amount of the depletion deduction shall be the applicable percentage, specified in section 613(b), of the "gross income from the property." This phrase is defined to mean the "gross income from mining." Sec. 613(c)(1). In this regard, the parties have agreed that petitioner's "gross income from mining" should be computed in this case under the proportionate *478 profits method. See sec. 1.613-4(d)(1)(i), Income Tax Regs.
Basically, in computing "gross income from mining," the proportionate profits method attributes to the mining and nonmining operations of the taxpayer the costs associated with those operations and a portion of the total profit. Standard Lime & Cement Co. v. United States,329 F.2d 939 (Ct. Cl. 1964). The objective of the method is premised upon the administratively convenient principle that "each dollar of the total costs paid or incurred to produce, sell, and transport the first marketable product or group of products * * * earns the same percentage of profit." Sec. 1.613-4(d)(4)(i), Income Tax Regs.; see North Carolina Granite Corp. v. Commissioner,56 T.C. 1281 (1971). Section 1.613-4(d)(4)(ii) of the regulations illustrates the method by the following equation: *479 Mining Costs / Total Costs X Gross Sales = Gross Income from Mining [Mining plus Nonmining Costs] Thus, we have reached the narrow question before us. We must decide the treatment to be accorded the transportation and warehousing expenses incurred by petitioner within the framework of this formula.[4]
Petitioner contends that its transportation and warehousing expenses should be allocated between the mining (numerator) and nonmining (denominator) costs. Briefly stated, petitioner's primary argument for the proposed allocation is that it is mandated by respondent's regulations. The particular regulation upon which it relies reads as follows: Those costs which are paid or incurred by the taxpayer to produce, sell, and transport the first marketable product or group *480 of products, and which are not directly identifiable with either a particular mining process or a particular nonmining process shall, in the absence of a specific provision of this section providing an apportionment method, be apportioned to mining and to nonmining by use of a method which is reasonable under the circumstances. * * * [Emphasis added. Sec. 1.613-4(d)(4)(iii), Income Tax Regs.] Because the costs in issue were incurred subsequent to the mining and manufacturing activities, they are, petitioner maintains, not "directly identifiable" with a particular process and accordingly are allocable between mining and nonmining costs. [5]
Respondent, on the other hand, argues that the expenses should be allocated to the denominator as nonmining costs. In essence, his position is that petitioner's transportation and warehousing expenses are indeed "directly identifiable" with a particular process, viz., nonmining. To support this conclusion, respondent relies upon the regulations which define nonmining costs and state as follows: *481 Transportation the primary purpose of which is marketing, distribution, or delivery for the application of only nonmining processes shall not be considered as mining. * * * Similarly, storage or warehousing of manufactured products shall not be considered as mining. * * * [Sec. 1.613-4(g)(3), Income Tax Regs.] Thus, respondent maintains that pursuant to these regulations the expenses in issue are directly identifiable with a particular process (nonmining), and accordingly are not allocable between petitioner's other mining and nonmining costs. For the reasons set forth below, we agree with respondent. Petitioner in this case maintains its principal place of business in Los Angeles, and therefore an appeal of the decision herein would lie in the Ninth Circuit. The Court of Appeals for the Ninth Circuit previously considered this issue in Southwestern Portland Cement Co. v. United States,435 F.2d 504 (9th Cir. 1970). In that case the taxpayer was an integrated miner-manufacturer of Portland cement.A distribution warehouse was maintained by the taxpayer in Paramount, Calif., for the purpose of making rapid deliveries of bulk cement to customers in the Los *482 Angeles area. Just as petitioner in the instant case, the taxpayer in Southwestern Portland maintained that the costs which it incurred in operating its warehouse and the costs of transporting the finished product thereto should be allocated between its mining and nonmining activities under the proportionate profits formula. In rejecting this contention and holding that these costs should be classified as nonmining, the court stated: Finally, appellant asks us to treat the expenses incurred at the Paramount facility, including the transportation of the cement to the plant, as "selling expenses" and allocate such expenses between mining and non-mining costs, rather than treating such expenses as non-mining costs only. Treasury Regulation 1.613-3(d)(4)(iii)(c)[5] is in direct conflict with this contention. Moreover, appellant is faced with the regulation 1.613-3(d)(4)(i) (1968) providing, among other things, "* * * [Non-mining] transportation includes the transportation * * * from a mining facility to a non-mining facility, or from one non-mining facility to another * * *." [435 F.2d at 510.] *483 We are unable to distinguish the present case from Southwestern Portland in any significant respects, [6] nor has petitioner furnished us any distinctions. [7] Accordingly, we are bound by this holding pursuant to the rule set forth in Golsen v. Commissioner,54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971), cert. denied 404 U.S. 940 (1971). We therefore conclude that petitioner's warehouse and transportation expenses are allocable in full to its nonmining costs.
To reflect the foregoing, Decisions will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect for the years in issue, unless otherwise indicated.↩
2. The parties agree that petitioner's depletion deduction should be computed under the proportionate profits method.↩
3. There are two methods for computing the amount of the depletion deduction. One method is cost depletion under sec. 612 which allows the recovery of only the taxpayer's basis in the property. The other method of computation, and the one with which we are concerned, is percentage depletion as provided in sec. 613.↩
4. We note at the outset that neither party has, with respect to the transportation costs, argued for the applicability of regulation sec. 1.613-4(e)(2)(ii). Generally, this regulation permits the exclusion from the proportionate profits formula of transportation costs which fall within the scope of the term "purchased transportation to the customer" as defined in sec. 1.613-4(e)(2)(iii), Income Tax Regs.↩
5. The parties do not dispute that the costs were incurred with respect to the "first marketable product or group of products."↩
5. The costs attributable to the operation of warehouses or distribution terminals for manufactured products shall be considered as non-mining costs.↩
6. The regulations cited and upon which the Ninth Circuit based its decision were superceded in 1972. However, the pertinent language remained unchanged. Compare secs. 1.613-3(d)(4)(iii)(c) and 1.613-3(d)(4)(i), Income Tax Regs. (1968), with secs. 1.613-4(d)(3)(iii)(c) and 1.613-4(d)(3)(i), Income Tax Regs.↩ (1972). 7. In analyzing the parties' arguments in this case, we were somewhat surprised by the fact that neither party cited the Ninth Circuit's decision.↩